1  Robert D. Fish, Esq. (SBN 149711)
2  rfish@fishiplaw.com
   Joseph A. Andelin, Esq. (SBN 274105)
3  jandelin@fishiplaw.com
   Fish IP Law, LLP
4  19900 MacArthur Blvd., Suite 810
   Irvine, California 92612
5  Telephone: 949-943-8300
   Facsimile: 949-943-8358
6
7  Attorneys for Plaintiff, The Infinite Actuary, LLC.

8                    **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA, THE SOUTHERN DIVISION**
10

11 The Infinite Actuary, LLC, a Delaware Limited Liability Company,   **Civil Action No. 2:25-cv-1715**

12                                                                    **COMPLAINT FOR COPYRIGHT INFRINGEMENT**
13         Plaintiff,

14              v.                                                    **DEMAND FOR JURY TRIAL**

15 Salt Solutions, Inc., an Iowa corporation, d/b/a Coaching Actuaries, Inc.
16
17         Defendants.

1. Plaintiff, by and through its attorneys of record, alleges as follows:

## PARTIES

2. Plaintiff, The Infinite Actuary, LLC ("Plaintiff"), is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 3590 Highway 31 S Ste 227B, Pelham, AL 35124.

3. Upon information and belief, Salt Solutions, Inc., a corporation organized and existing under the laws of Iowa, and doing business as Coaching Actuaries, Inc. ("Defendants"), are entities residing in Iowa, with a place of business at 2231 NW 108th Street, Clive, IA 50325.

## SUBJECT MATTER JURISDICTION

4. This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501 and 106.

5. Upon information and belief, Defendants do business in the state of California.

6. Upon information and belief, Defendants market to consumers throughout the United States via social media and online advertising.

7. Upon information and belief, consumers located within this judicial district and throughout the United States can access Defendants' social media and online advertising in order to purchase Defendants' goods and services.

8. Upon information and belief, consumers throughout the United States, including those within this judicial district, have purchased and will continue to purchase, Defendants' goods and services.

9. Defendants' actions, targeted at consumers in California, including this judicial district, have harmed and will continue to harm Plaintiff, a California limited liability company doing business within this judicial district.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400.

## BACKGROUND

### Plaintiff's Copyrighted Study Materials for CAS Exam 5

11. Plaintiff is in the business of providing courses and study materials for actuarial exams.

12. Between the fall of 2013 and spring of 2014, Plaintiff developed new course materials for Casualty Actuarial Society (CAS) Exam 5.

13. Casualty Actuarial Society (CAS) is an international organization founded in 1914 that provides actuarial credentialing exclusively for property and casualty risks (commonly known as general insurance or non-life insurance), which includes automotive insurance, home insurance, business insurance, and workers compensation. **Exhibit 1**.

14. CAS Exam 5 covers basic ratemaking, reserving, and estimating claim liabilities. **Exhibit 2**. CAS Exam 5 is offered by CAS twice a year –in April/May and October/November.

15. Plaintiff first started selling its new CAS Exam 5 course materials around 2014. Plaintiff has occasionally released updates, enhancements, and revisions to its CAS Exam 5 course materials from the release date until the present time.

16. Plaintiff is the owner of copyright registration no. TX 9-455-803, which protects Plaintiff's CAS Exam 5 course materials as published on January 18, 2019. Copyright registration no. TX 9-455-803 has an effective date of registration of December 16, 2024. **Exhibit 3**.

17. Plaintiff's CAS Exam 5 course materials are offered for sale on its website. **Exhibit 4**.

18. Mr. Josh Taub is the creator of Plaintiff's CAS Exam 5 course materials and instructor for the CAS Exam 5 course. Mr. Taub is a Fellow (highest class of membership) of the CAS and is currently serving as a committee Vice Chair. Mr. Taub has more than twenty years of work experience in property and casualty risks. Mr. Taub has spoken at CAS-sponsored events in the U.S. and internationally and has been published in Carrier Management and Property/Casualty 360. **Exhibit 4.**

### Defendants' Failed Launch in 2023

19. Upon information and belief, Defendants are in the business of providing courses and study materials for actuarial exams.

20. Upon information and belief, Defendants own the website URL https://www.coachingactuaries.com/, advertising its goods and services under the name Coaching Actuaries and providing online ordering. **Exhibit 5**.

21. Upon information and belief, Defendants first launched its CAS Exam 5 course and study materials in the summer of 2023. Shortly thereafter, Defendants' customers immediately complained that the course was only 25% complete. **Exhibit 6**.

22. On September 30, 2023, Tong Teh, President of Coaching Actuaries, issued an apology to its CAS Exam 5 customers for failing to deliver the CAS Exam 5 course materials in time for the October 2023 exam date as originally promised, and issued a full refund. **Exhibit 7**.

23. On October 12, 2023, Tong Teh issued another update to its customers, explaining that its CAS Exam 5 course materials were not delivered on time because its CAS Exam 5 team was simultaneously working on other exams. **Exhibit 7**.

24. Upon information and belief, Defendants' CAS Exam 5 team consists of six individuals: Mike Carmody, Kong Foo Pang, Dana Zrust, Fred Brautigam, Austin Wallestad, and Shi Yi Wong. **Exhibit 8**.

25. None of these six individuals mentioned being a CAS member in their biographies on Defendants' website. **Exhibit 8**.

26. None of these six individuals mentioned having any work experience in property and casualty risks in their biographies on Defendants' website. **Exhibit 8**.

**Defendants Accessed Plaintiff's Copyrighted Materials Prior to 2023**

27. Kong Foo Pang purchased Plaintiff's copyrighted CAS Exam 5 course materials on June 28, 2019, at 10:22:09 pm, from West Des Moines, Iowa, for $1,195.00. **Exhibit 9**.

28. Austin Wallestad purchased Plaintiff's copyrighted CAS Exam 5 course materials on January 21, 2021, at 6:11:19 pm, from West Des Moines, Iowa, for $1,195.00. **Exhibit 10**.

29. Patrick Fitzmaurice purchased Plaintiff's copyrighted CAS Exam 5 course materials on September 10, 2022, at 1:13:13 am, from Downers Grove, Illinois, for $1,195.00. **Exhibit 11**.

30. Upon information and belief, Kong Foo Pang, Austin Wallestad, and Patrick Fitzmaurice purchased Plaintiff's copyrighted Exam 5 course materials for the purpose of preparing CAS Exam 5 course materials for Defendants, their employer.

31. The terms and conditions for Plaintiff's CAS Exam 5 course materials state that the materials are protected by copyright and may not be reproduced, modified, or used to create derivative works. **Exhibit 12**.

32. Upon information and belief, Kong Foo Pang, Austin Wallestad, and Patrick Fitzmaurice violated the terms and conditions by copying and using Plaintiff's copyrighted Exam 5 course materials to prepare course materials for Defendants.

**Plaintiff Discovered Infringing Material in Defendants' CAS Exam 5 Summary Sheet**

33. Plaintiff first became aware of Defendants' infringing CAS Exam 5 course materials on or around October 14, 2024, from a Discord postdated October 7, 2024. The Discord post included a link to Defendants' CAS Exam 5 summary sheet on its website. **Exhibit 13**.

34. Upon reviewing the summary sheet, Plaintiff noticed numerous instances of blatant copying. **Exhibit 14**.

35. For example, Defendants' summary sheet copied the exact same list of policies as Plaintiff's list of policies, in the exact same order. **Exhibit 14**, example #1.

36. Defendants' summary sheet also copied Plaintiff's "Calculating a trend" materials. **Exhibit 14**, example #2.

37. Defendants' summary sheet also copied Plaintiff's reference to "nose" coverage. **Exhibit 14**, example #3.

38. Defendants' summary sheet also copied Plaintiff's "Standard Premium" explanation. **Exhibit 14**, example #4.

39. Defendants' summary sheet also copied Plaintiff's "Goals of Reserving" title to describe a section of the course. **Exhibit 14**, example #5.

40. Defendants' summary sheet also copied Plaintiff's "Impact of changes on Expected Claims estimates." **Exhibit 14**, example #6.

41. Defendants' summary sheet also copied Plaintiff's "Rules for adjusting ECR with Expected Claims method". **Exhibit 14**, example #7.

42. Defendants' summary sheet also copied Plaintiff's unique terminology with the use of 'B_est' for the simplified generalized method for calculating ULAE. **Exhibit 14**, example #8.

43. Defendants' summary sheet also copied Plaintiff's "Calculating Direct Effects on Premium." **Exhibit 14**, example #9.

44. Defendants' summary sheet also copied Plaintiff's "Extension of Exposures." **Exhibit 14**, example #10.

45. Defendants' summary sheet also copied Plaintiff's "Two-Step Trends." **Exhibit 14**, example #11.

46. Defendants' summary sheet also copied Plaintiff's discussion of incorporating ALAE int ratemaking. **Exhibit 14**, example #12.

47. Defendants' summary sheet also copied Plaintiff's "Impact of changes on Chain Ladder estimates." **Exhibit 14**, example #13.

48. Defendants' summary sheet also copied Plaintiff's "Impact of changes on Bornhuetter-Ferguson estimates." **Exhibit 14**, example #14.

Defendants' summary sheet also copied Plaintiff's "Impact of changes on Cape Cod estimates." **Exhibit 14**, example #15.

## Prelitigation Communications

49. On October 14, 2024, Plaintiff notified Defendants by email that it discovered infringing content in Defendants' CAS Exam 5 summary sheet.

50. On October 14, 2024, Defendants' president, Tong Teh, responded by email to Plaintiff, saying that he would investigate the claims of infringement and would follow up within one week.

51. On October 21, 2024, Tong Teh emailed Plaintiff, saying that his investigation would be finished by the next day and offered to share their investigation findings provided that Plaintiff sign a non-disclosure agreement (NDA).

52. On October 22, 2024, Plaintiff responded by email to Tong The, declining to receive Defendants' investigation findings and sign an NDA, and suggesting focusing communications on a resolution.  Plaintiff also requested that Defendants remove their CAS Exam 5 course materials, and recreate their course materials without relying on any of Plaintiff's copyrighted content.

53. On October 22, 2024, after Plaintiff's email, the parties had a video call. During the phone call, Tong Teh denied copying Plaintiff's materials.

54. On October 14, 2024, each party gave one another full access to their CAS Exam 5 course materials for the purpose of evaluating similarities. Plaintiff reviewed Defendants' full CAS Exam 5 course materials, which revealed many more examples of copying. **Exhibit 15**.

55. For example, Defendants copied Plaintiff's "Line of Business/Coverage" table. **Exhibit 15**, example #1.

56. Defendants also copied Plaintiff's "Calculating Direct Effects on Premium." **Exhibit 15**, example #2.

57. Defendants also copied Plaintiff's color graphs. **Exhibit 15**, example #3.

58. Defendants also copied an older mistake in Plaintiff's materials regarding the description of "drop-down" coverage on Umbrella policies. **Exhibit 15**, example #4.

59. Defendants also copied Plaintiff's solution steps to CAS exam 5 problem 2010 question 12. **Exhibit 15**, example #5.

60. Defendants also copied Plaintiff's solution to CAS exam 5 problem 2008 question 12. **Exhibit 15**, example #6.

61. Defendants also copied Plaintiff's "Mid-Term Recalculations of Premium." **Exhibit 15**, example #7.

62. Defendants also copied Plaintiff's "Different Earning Patterns" including reference to snowmobile coverage. **Exhibit 15**, example #8.

63. Defendants also copied Plaintiff's solution to CAS exam 5 problem 2009 question 18. **Exhibit 15**, example #9.

64. Defendants also copied Plaintiff's "Statement of Principles of Ratemaking." **Exhibit 15**, example #10.

65. Defendants also copied Plaintiff's "Types of Adjustments to Historical Data." **Exhibit 15**, example #11.

66. Defendants also copied Plaintiff's "Calculating Direct Effects on Losses." **Exhibit 15**, example #12.

67. Defendants also copied Plaintiff's "Uneven Writings: An Alternative Approach." **Exhibit 15**, example #13.

68. Defendants also copied Plaintiff's "On-Leveling Written Premium." **Exhibit 15**, example #14.

69. Defendants also copied Plaintiff's "Diagnostic Triangles." **Exhibit 15**, example #15.

70. Defendants also copied Plaintiff's organization of course materials for premium and loss data adjustments into one-time changes, trends, and development. **Exhibit 15**, example #16.

71. Defendants also copied Plaintiff's "Rates of Trend." **Exhibit 15**, example #17.

72. Defendants also copied Plaintiff's "Adjusting for Seasonality." **Exhibit 15**, example #18.

73. Defendants also copied Plaintiff's list of common trending assumptions. **Exhibit 15**, example #19.

74. Defendants also copied Plaintiff's discussion of 2 ways to perform the first step of a two-step trend. **Exhibit 15**, example #20.

75. Defendants also copied Plaintiff's "Large Events & Anomalies." **Exhibit 15**, example #21.

76. Defendants also copied Plaintiff's "One-time Changes." **Exhibit 15**, example #22.

77. Defendants also copied Plaintiff's "Development." **Exhibit 15**, example #23.

78. Defendants also copied Plaintiff's list of how ALAE is incorporated into ratemaking. **Exhibit 15**, example #24.

79. Defendants also copied Plaintiff's description of increased limit credibility complements using ratios of expected losses. **Exhibit 15**, example #25.

80. Defendants also copied Plaintiff's approach for allocating premium shortfalls when calculating new rate relativities with rate capping. **Exhibit 15**, example #26.

81. Defendants also copied Plaintiff's "Understanding Claims-Made Policies." **Exhibit 15**, example #27.

82. Defendants also copied Plaintiff's discussion of ratable limits in retrospective rating not being the same as coverage limits. **Exhibit 15**, example #28.

83. Defendants also copied Plaintiff's "Calculating the Expected Claim Ratio." **Exhibit 15**, example #29.

84. Defendants also copied Plaintiff's "Which Levels to Use in ECR and Premium." This is related to the content from **Exhibit 14**, example #7, though this example shows the content in the Defendants' online course rather than their summary sheet. **Exhibit 15**, example #30.

85. Defendants also copied Plaintiff's "Using a given ECR." This is related to the content from **Exhibit 14**, example #7, though this example shows the content in the Defendants' online course rather than their summary sheet. **Exhibit 15**, example #31.

86. Defendants also copied Plaintiff's note about quota share percentages. **Exhibit 15**, example #32.

87. Defendants also copied Plaintiff's comment about triangle-based techniques being rarely used and not commonly tested. **Exhibit 15**, example #33.

88. On October 24, 2024, Tong Teh emailed Plaintiff and said they made several minor changes to their content.

89. On October 26, 2024, the parties held another video call between Plaintiff's CEO, James Washer, and Defendants' CEO, Dave Kester. During the video call, Plaintiff pointed out the three examples of copyright infringement previously mentioned. **Exhibit 15** examples #1, #2, #3.

90. On October 28, 2024, Dave Kester emailed Plaintiff, agreeing that the three examples of infringement that Plaintiff identified during the video call on October 26, 2024, should not have been used in Defendants' course materials. However, Dave Kester said he believed there were only isolated instances of similarity between the parties' content rather than a systemic issue. Dave Kester refused to remove Defendants' CAS Exam 5 course materials and recreate their materials without using Plaintiff's copyrighted content.

91. Dave Kester also refused to agree to prohibit Defendants' content creators from accessing Plaintiff's copyright materials on the grounds that doing so was "withing acceptable research boundaries."

## COUNT ONE: COPYRIGHT INFRINGEMENT

92. Plaintiff re-alleges and incorporates herein all the allegations of the preceding paragraphs.

93. Copyright Registration No. TX 9-455-803 is valid and enforceable.

94. Plaintiff created and released its CAS Exam 5 course materials years before Defendants released their CAS Exam 5 course materials.

95. At least three of Defendants' employees purchased Plaintiff's CAS Exam 5 course materials prior to Defendants' launch of its CAS Exam 5 course materials.

96. Defendants' first launch of its CAS Exam 5 course materials was a failure, and Defendants had to issue refunds. Defendants' first launch of CAS Exam 5 course materials was too incomplete to prepare customers for the Fall 2023 exam.

97. None of Defendants' content creators and team members listed on its website for the CAS Exam 5 course materials listed any experience in property and casualty insurance in their bios.

98. Substantial portions of Defendants' CAS Exam 5 course materials are identically copied from Plaintiff's copyrighted CAS Exam 5 course materials.

99. Substantial portions of Defendants' CAS Exam 5 course materials are derivative of Plaintiff's copyrighted CAS Exam 5 course materials.

100. Defendants copied Plaintiff's coaching tips, lists, color graphs, and non-essential background information.

101. Defendants' use of the copyright material constitutes direct and/or contributory infringement of Plaintiff's federal copyright registration no. TX 9-455-803, in violation of 17 U.S.C. § 101.

102.

## PRAYER FOR RELIEF

Plaintiff prays for judgment and relief as follows:

A) Judgment that federal copyright registration no. TX 9-455-803 is valid and enforceable;

B) Judgment that the Defendant, its directors, officers, employees, attorneys, and agents, and all those persons acting in active concert or in participation with them, and their successors

  and assigns, be preliminarily and permanently enjoined from further acts that infringe Plaintiff's copyright, whether directly or contributorily, in violation of 17 U.S.C. §§ 501 and 1203;

C) Judgment that the Defendants be ordered to pay damages adequate to compensate Plaintiff for infringement of federal copyright registration no. TX 9-455-803, with interest, including pre-judgment interest from the date infringement began;

D) For an order from Court requiring that Defendants provide complete accountings of its infringing sales of CAS Exam 5 course materials and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or as equity requires;

E) Judgment that the Defendants be ordered to pay all costs and expenses incurred by Plaintiff associated with this action pursuant to 17 U.S.C. § 501;

F) Judgment that this case is exceptional, and that the Defendants be ordered to pay all of Plaintiff's attorney fees associated with this action pursuant to 17 U.S.C. § 501; and

G) Judgment that Plaintiff be granted any other relief as this Court finds just and proper, including enhanced damages.

**DEMAND FOR JURY TRIAL**

103. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted,

FISH IP LAW, LLP

Dated: February 27, 2025

By: /s/Robert D. Fish
Robert D. Fish, Esq.
Attorney for Plaintiff,
The Infinite Actuary, LLC.